IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTOPHER CROOM,** | |
| Plaintiff, | |
| v. | Case No. 23-cv-2885-NJR |
| **LATOYA HUGHES, ROB JEFFREYS,** and **ANTHONY WILLS,** | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Christopher Croom, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard Correctional Center. His initial Complaint, alleging violations under the Eighth and Fourteenth Amendments while housed in Menard's East Cellhouse, was dismissed without prejudice for failure to state a claim (Doc. 8). Croom was granted leave to file an amended pleading.

In his First Amended Complaint, Croom alleges that he was denied due process rights and subjected to unconstitutional conditions of confinement in the East Cellhouse. He raises claims under both the Eighth and Fourteenth Amendments.

This case is now before the Court for preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a).

1

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The First Amended Complaint

Croom now makes the following allegations: At all times relevant to the claims in his Amended Complaint, Croom was housed in the East Cellhouse at Menard (Doc. 11, p. 8). Although a general population cellhouse, Croom alleges that inmates are confined to their cells in the unit for 24 hours per day, except for the days where inmates are allowed access to the yard (*Id.*). Inmates have access to the yard, at most, two times per week for 4-4 ½ hours at a time (*Id.*). They are not allowed to attend school, participate in prison programs, or hold a prison job (*Id.* at p. 14). Croom alleges the East Cellhouse is known as the disciplinary cellhouse, and the cellhouse, as a whole, is provided less privileges than other general population cellhouses (*Id.* at p. 16).

Croom was placed in the East Cellhouse in March 2022. While confined to the cellhouse, Croom experienced several cellhouse-wide disciplinary actions (*Id.* at p. 8). During those time periods, inmates in the cellhouse were either on lockdown or limited in their ability to access the yard or telephone privileges. For example, on September 1, 2022, the entire cellhouse's yard access was limited to one day per week in response to a fight between two inmates on the yard (*Id.*). The prison as a whole was not put on lockdown. Only the East Cellhouse was subjected to the restrictions for 60 days (*Id.*). On November 1, 2022, the East Cellhouse's yard time was restored to two days per week (*Id.*).

On November 23, 2022, during the meal line for the Thanksgiving meal, a fight broke out between inmates on 7-Gallery (*Id*. at p. 9). Again, the entire cellhouse was punished with restricted yard access for one month (*Id*.). The cellhouse was on lockdown for two to three days, but the limitation on yard access lasted for a full month (*Id*.). On January 5, 2023, another fight broke out between two inmates on the yard. The East Cellhouse was again limited to one yard day per week and a two or three-day lockdown (*Id*.). Croom alleges this limitation on yard access lasted until his transfer from Menard in June 2023 (*Id*.).

On May 16, 2023, another fight broke out on 5-Gallery resulting in the limitation of phone privileges for the entire cellhouse. Thus, in addition to the limitation placed on Croom's access to the yard, he was also limited in the amount of access he had to the telephones (*Id*. at p. 10). Specifically, telephone privileges were only offered on second shift as opposed to both first and second shift. Croom alleges that these limitations on his access to the yard and telephone constituted a punishment without due process. He never received notice of the discipline or a chance to appear at a disciplinary hearing prior to the punishment (*Id*. at pp. 10-11).

Croom alleges that as a result of the punishment, he was often confined to his cell for six to seven days a week over the course of eight months (*Id*. at p. 12). The cell was small, and the length of time confined to the cell caused Croom to suffer from severe migraines, depression (including loss of interest in his normal recreational and educational activities), body aches, and physical degradation (*Id*.). He is now easily frustrated and prone to anger (*Id*.). Croom also was diagnosed with degenerative disc

3

disease in his lower back after being incarcerated at Menard and experiencing restrictions on his mobility (*Id*.). He also suffers from PTSD, insomnia, and recurrent thoughts of death, and he hears voices of his dead loved ones (*Id*.). He has been prescribed psychotropic medications to combat his mental conditions (*Id*. at p. 13). He alleges that he was forced to be involved in a riot which led to being stabbed by another inmate (*Id*.). Croom blames the conditions he experienced in the East Cellhouse for his involvement in the riot (*Id*.).

## Discussion

Based on the allegations in the First Amended Complaint, the Court designates the following counts:

**Count 1:** **Fourteenth Amendment due process claim against Anthony Wills, Latoya Hughes, and Rob Jeffreys for restricting Croom's access to yard and other privileges during cellhouse-wide restrictions placed on the East Cellhouse.**

**Count 2:** **Eighth Amendment conditions of confinement claim against Anthony Wills, Latoya Hughes, and Rob Jeffreys for restricting Croom's access to yard and other privileges while housed in the East Cellhouse.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the First Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

**Count 1**

As to Croom's due process claim, the Court undertakes a two-part analysis. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). The Court first evaluates whether a plaintiff was deprived of a protected liberty interest, and then second, it evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)). To establish the deprivation of a protected liberty interest, a plaintiff must show that the discipline imposed an "atypical and signification hardship" on the inmate. *See, e.g., Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Croom alleges that he experienced cellhouse-wide restrictions, including restrictions on his access to the yard and limited use of the telephone. While housed in Menard's East Cellhouse, Croom also was not allowed to participate in any programs or hold a prison job. But none of these restrictions amount to an atypical and significant hardship. Courts have found that the loss of visitation privileges does not constitute an "atypical and significant hardship." *Woody v. Zatecky*, 594 F. App'x 311, 312 (7th Cir. 2015). Further, the lack of access to a prison job, as well as the inability to participate in activities and educational programs, does not constitute the deprivation of a protected liberty interest. *See Lekas v. Briley*, 405 F.3d 602, 611 (7th Cir. 2005) (citing *Thomas v. Ramos*, 130 F.3d 754, 757-60 (7th Cir. 1997)); *DeWalt v. Carter*, 224 F.3d 607, 613 (7th Cir. 2000) (finding no protected liberty interest in holding a prison job); *Garza v. Miller*, 688 F.2d 480, 485-86 (7th Cir. 1982), *cert. denied* 459 U.S. 1150 (1983) (no liberty interest in increased recreation or prison programs); *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (no right to educational or rehabilitative programs). As the Court previously stated in dismissing his

5

original Complaint, Croom's allegations are akin to a cellhouse-wide lockdown, and there is no liberty interest in avoiding a lockdown. *See Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996); *Caldwell v. Miller*, 790 F.2d 589, 604-05 (7th Cir. 1986). Thus, Croom's due process claim in Count 1 is **DISMISSED without prejudice**.

**Count 2**

Croom's allegations regarding the conditions he faced in the East Cellhouse could, however, amount to an Eighth Amendment violation. *See Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013). Croom alleges that due to the frequent restrictions placed on the East Cellhouse, he was afforded limited opportunities outside of his cell. As a result, he suffered both mentally and physically. As warden, Croom alleges that Anthony Wills was the individual who instituted the cellhouse-wide restrictions after obtaining permission from the directors, including Latoya Hughes and Rob Jeffreys. He alleges that, per IDOC policy, only Wills could institute lockdowns and restrictions (*Id*. at p. 24). He also alleges that the restrictions had to be reviewed and approved by the directors (*Id*.). Thus, Croom states a claim in Count 2 against Anthony Wills, Latoya Hughes, and Rob Jeffreys.

## Disposition

For the reasons stated above, Count 1 is **DISMISSED without prejudice**. Count 2 shall proceed against Anthony Wills, Latoya Hughes, and Rob Jeffreys.

The Clerk of Court shall prepare for Defendants Anthony Wills, Latoya Hughes, and Rob Jeffreys: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to

mail these forms, a copy of the First Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Croom. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Croom, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Croom, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Croom is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** April 23, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**