IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHRISTOPHER CROOM,** | |
| Plaintiff, | |
| v. | Case No. 23-cv-2885-NJR |
| **LATOYA HUGHES, ROB JEFFREYS, and ANTHONY WILLS,** | |
| Defendants. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Christopher Croom, an inmate of the Illinois Department of Corrections who is currently incarcerated at Lawrence Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while at Menard Correctional Center. The case is currently before the Court on a motion for summary judgment filed by Latoya Hughes, Rob Jeffreys, and Anthony Wills (Doc. 31). Defendants argue that Croom failed to exhaust his administrative remedies against them prior to filing his Complaint. Croom filed a response (Doc. 37).

## BACKGROUND

Croom's Complaint raised issues with the conditions of confinement he experienced while housed in Menard's East Cellhouse (Doc. 14, p. 2). Croom noted that although the East Cellhouse was a general population cellhouse, inmates in the cellhouse were confined to their cells for 24 hours a day, except for days when they had access to

the yard (*Id.*). Inmates were only offered yard, at most, two times per week for 4-4 ½ hours each time (*Id.*). Inmates in the unit also were denied other activities, including school and programs, and they could not hold a prison job.

Croom alleged he was housed in the East Cellhouse in March 2022 (Doc. 14, p. 2). During his time there, the entire cellhouse was either on lockdown or had restricted access to the yard. For several weeks in September 2022, the cellhouse was limited to one yard day per week (*Id.*). Similarly, in late November 2022, the entire cellhouse's yard access was again limited for a full month (*Id.* at p. 3). From January 2023 until Croom's transfer in June 2023, he only received one day of yard per week (*Id.*).

Croom also took issue with the size of his cell, noting that it was small and he was often confined in the cell for six to seven days per week (*Id.*). The size and length of time confined to the cell caused Croom to suffer from physical and psychological conditions (*Id.* at pp. 3-4).

Croom further alleged that Anthony Wills, Latoya Hughes, and Rob Jeffreys were responsible for the conditions of the cellhouse and the restrictions Croom faced while there (Doc. 14, p. 6). Specifically, he alleged that IDOC directors Hughes and Jeffreys gave Wills permission to institute cellhouse-wide restrictions. Further, as warden, Anthony Wills was the only one who actually instituted lockdowns and restrictions on the inmates. Croom also alleged that the restrictions were reviewed and formally approved by the directors (*Id.*).

After a review of the Complaint pursuant to 28 U.S.C. § 1915A, Croom was allowed to proceed on the following count:

> Count 2: Eighth Amendment conditions of confinement claim against Anthony Wills, Latoya Hughes, and Rob Jeffreys for restricting Croom's access to yard and other privileges while housed in the East Cellhouse.

(Doc. 14, p. 4).

Croom filed several grievances regarding conditions in the East Cellhouse.

> **October 23, 2022 Grievance (#304-10-22)**: Croom submitted a grievance complaining about his ability to access the yard while in the East Cellhouse (Doc. 11, p. 28). He complained that in September 2022, the entire cellhouse was disciplined due to a fist fight between two inmates on the yard. As a result, the entire cellhouse was limited to one day of recreation per week (*Id.*). Croom received only 4 – 4 ½ hours of out of cell time. Croom complained that the punishment violated IDOC policy and legal standards (*Id.* at p. 29). On October 26, 2022, Croom's counselor received the grievance. On October 31, 2022, the counselor noted that the reduction in yard time was a decision made "on an administrative level" for the safety of the cellhouse due to increased fighting by inmates in the East Cellhouse (*Id.*). Croom submitted the grievance to the grievance officer; it was denied. The grievance officer concurred with the counselor's response, noting that the amount of recreation time during lockdowns was determined by the Chief Administrative Officer ("CAO") and IDOC's deputy director (*Id.* at p. 30). On February 24, 2023, the CAO concurred with the grievance officer's response (*Id.*). Croom appealed the grievance to the Administrative Review Board ("ARB") (*Id.*). On June 2, 2023, the ARB denied the grievance, noting that the grievance was appropriately addressed by the prison (*Id.* at p. 31).

Defendants point to other grievances submitted by Croom regarding his access to the yard. Grievance #87-6-23 was submitted to the counselor on June 1, 2023. The counselor provided a response a week later. Defendants contend there is no evidence that this grievance was submitted to the grievance office. On August 3, 2023, the ARB received the grievance, noting that it was submitted to them from Pontiac Correctional Center (Doc. 11, p. 34). The ARB further noted that the grievance involved restrictions on Croom's movement after a fight. The ARB further noted that Croom was not involved in

the alleged fight which affected his movement. On October 6, 2023, the ARB denied the grievance on the merits, noting that it was appropriately addressed at the first level (*Id*.). Unfortunately, Defendants did not attach a copy of this grievance to their motion, and the Court cannot locate it on the docket.

On July 12, 2023, while at Pontiac, Croom submitted a grievance regarding the conditions at Menard. He complained that while at Menard in the East Cellhouse he was confined to his cell 6-7 days per week (Doc. 11, p. 33). Although he requested placement in the drug program and the education department, he never received a response from the prison (*Id*.). He asked officials to make rehabilitation programs available to all inmates in the East Cellhouse and requested a transfer back to Menard (*Id*.). The grievance was submitted directly to the ARB, but returned to Croom because the issues complained of did "not involve the grievant." (*Id*. at p. 32). Defendants contend that the ARB received a second grievance from Croom dated July 12, 2023; that grievance was also returned because no names or descriptions of staff were identified. Defendants failed to attach this grievance to their motion.

## Legal Standards

"Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the defendant] is entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of

4

this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008), the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given

5

another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Croom was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claim. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the ["CAO"] within two months after receipt of the grievance, when reasonably feasible under the

circumstances." 20 Ill. Admin. Code §504.830(e). "The [CAO] shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what

7

action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Exhaustion is an affirmative defense, and Defendants bear the burden of proof. *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011); *Obriecht v. Raemisch*, 517 F.3d 489, 492 (7th Cir. 2008). In order to meet their burden, Defendants must offer evidence to demonstrate that Croom failed to exhaust his administrative remedies by offering grievance records, counseling summaries, and affidavits explaining the grievance procedure at the prison. *Daniels v. Prentice*, 741 F. App'x 342, 343-44 (7th Cir. 2018). Here, Defendants fail to offer any evidence in support of their motion. Although they point to grievance logs and grievances supposedly attached as exhibits to their motion, Defendants failed to actually produce those exhibits to the Court. Defendants refer to copies of some of the grievances that were attached to Croom's Amended Complaint, but they fail to attach the logs they rely on to prove their arguments. Defendants had ample time to correct their mistake since filing their motion, but they have not sought to supplement the record with their exhibits.

Even if Defendants had properly attached exhibits to their motion, they still fail to demonstrate that Croom failed to exhaust his administrative remedies. Defendants

8

acknowledge that some of Croom's grievances were fully exhausted but argue that the grievances failed to adequately identify them. Exhaustion is not intended to provide individual notice to each prison official who might later be sued; it is designed to provide the prison with notice of *the problem* and give them an opportunity to fix it. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)); *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). As such, an inmate must provide enough information to serve the grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaint." *Maddox*, 655 F.3d at 722.

Croom's October 2022 grievance gave the prison notice of his claims against the defendants. He complained about administrative decisions involving the East Cellhouse. Further, in responding to the grievance, the counselor noted that the decisions Croom complained about were "made on an administrative level" (Doc. 11, p. 28). The grievance officer further explained that recreation time decisions were made by the CAO and IDOC's deputy director (*Id*. at p. 30). It is clear from the grievance responses that officials knew that Croom was complaining about administrative decisions that were determined by high level administrators such as Wills, Hughes, and Jeffreys. Finally, the Court notes that the grievance was fully exhausted. "A procedural shortcoming … amounts to a failure to exhaust only if prison administrators explicitly relied on the shortcoming." *Maddox*, 655 F.3d at 722 (quoting *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005)). Although Croom did not specifically identify any defendant in his grievance, none of the grievance officials rejected the grievance for its failure to adequately identify a specific

official. Thus, the October 2022 grievance exhausted Croom's claims against Defendants Anthony Wills, Latoya Hughes, and Rob Jeffreys.

It also appears that Croom's June 1, 2023 grievance exhausted Croom's claims here. Although Defendants failed to attach the grievance itself to their motion, the ARB's response indicates that this grievance also complained about restricted movement in Croom's cellhouse (Doc. 11, p. 34). The ARB also ruled on the merits of the grievance. Defendants argue that Croom only submitted the grievance to his counselor and then submitted it directly to the ARB, and he improperly held onto the grievance until he was transferred to Pontiac and then submitted it directly to the ARB. But there is simply no evidence that Croom improperly submitted the grievance to the ARB. Even if Croom had improperly withheld the grievance until his transfer to Pontiac, the ARB ruled on the merits of the grievance and did not rely on any perceived procedural shortcoming. *Maddox*, 655 F.3d at 722. Thus, this grievance was also properly exhausted.

## CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (Doc. 31) is **DENIED**.

**IT IS SO ORDERED.**

DATED: March 17, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**