IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER CROOM,<br><br>    Plaintiff,<br><br>v.<br><br>LATOYA HUGHES, ROB JEFFREYS, and ANTHONY WILLS,<br><br>    Defendants. | Case No. 3:23-CV-02885-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on Plaintiff's Emergency Motion for Preliminary Injunctive Relief and a Temporary Restraining Order. (Doc. 40). He seeks an order from the Court directing Defendants to permit him two hours per day of exercise time outside of his cell. For the reasons set forth below, the motion is denied.

## BACKGROUND

Plaintiff Christopher Croom, an inmate of the Illinois Department of Corrections ("IDOC"), filed this lawsuit under 42 U.S.C. § 1983 alleging violations of his rights under the Eighth and Fourteenth Amendments. (Doc. 8, p. 2 (First Merits Review Order)). Croom specifically criticized the amount of out-of-cell recreation time he received as an inmate of the Menard Correctional Center ("Menard") due to restrictions imposed on all prisoners in the East Cell House, where he was, and is now again, housed. (*Id.*). Croom often was afforded access to the prison yard only once a week and sometimes received no out-of-cell time at all due to lockdowns, weather, or other "excuses" from staff.

(*Id.*, p. 3). The Court dismissed Croom's complaint for failure to state a claim without prejudice because (i) his Fourteenth Amendment claim was not based on a protected liberty interest, and (ii) his Eighth Amendment claim failed to allege that the named Defendants personally decided to limit his out-of-cell time. (*Id.*, pp. 8, 11).

On February 20, 2024, Croom filed a first amended complaint, naming as Defendants Anthony Wills (the warden of Menard), Latoya Hughes (the director of the IDOC), and Rob Jeffreys (the former director of the IDOC). The amended complaint alleged that East Cell House inmates were confined to their cells for 24 hours a day. (Doc. 14, p. 2 (Second Merits Review Order)). At most, the inmates were afforded yard access twice per week for 4-4½ hours at a time. (*Id.*). Yard time, however, was often limited to once per week and often not provided at all due to frequent lockdowns. (*Id.*, p. 3). These restrictions caused Croom to suffer emotional and physical harm, including insomnia, anxiety, degenerative disc disease, body aches and other symptoms. (*Id.*, p. 3, 4). After threshold review of the amended complaint pursuant to 28 U.S.C. § 1915A, Croom was permitted to proceed on one claim:

> Count 2: Eighth Amendment conditions of confinement claim against Anthony Wills, Latoya Hughes, and Rob Jeffreys for restricting Croom's access to yard and other privileges while housed in the East Cellhouse.

In his Motion for Emergency Preliminary Injunctive Relief and a Temporary Restraining Order (Doc. 40), Croom alleges that from December 20, 2024, when he returned to Menard (he was briefly transferred to another prison), to March 11, 2025 (the day he drafted his motion), he received no out-of-cell exercise time at all. (*Id.*, p. 4;

Doc. 46-1 (Wills Decl. ¶ 25)). Staff allegedly "cancel the yard every week for no reason." (Doc. 40, p. 4). He is allegedly "locked in the cell 24 hours a day, 7 days a week." (*Id.*, p. 5). He "does not exercise . . . due to extreme depression stemming from this systematic oppression, . . . and tyrannical abuse." (*Id.*). These restrictions are imposed despite an unspecified prison policy that "possibly" requires inmates to receive one 4½ hour yard period per week.[1] (*Id.*).

To address these conditions, Croom asks the Court to order "any one or [a] combination of" the following remedial measures: (1) a declaration that Defendants' practices violated his constitutional rights; (2) placement "in an institution for his mental and physical wellbeing where out-of-cell exercise is given"—(he is "not picky" and would be willing to accept a transfer to any other prison (state or federal) in the country); (3) a restraining order imposed on Menard until it "is brought to constitutional requirements;" (4) appointment of a medical expert specializing in solitary confinement; (5) appointment of a psychologist specializing in solitary confinement; and/or (6) two hours per day of out-of-cell time for exercise. (*Id.*, pp. 11-15).

Five of Croom's proposed measures must be denied at the outset. A judicial declaration that Croom's constitutional rights were violated is not a proper subject in a motion for injunctive relief. *See Gosain v. Texplas India Priv. Ltd.*, No. 09cv04172, 2019 WL

---

[1] Croom cites Exhibit C of his amended complaint to support his claim that inmates must receive 4½ hours of yard access per week. But Exhibit C reveals no such requirement. It is an IDOC "Administrative Directive," which states in relevant part that "maximum security – is not restrictive housing and offenders must be allowed more than 2 hours of out of cell time daily as well as access to general population services." (Doc. 11, p. 36). It is unclear, based on Croom's motion for injunctive relief, whether he qualifies for this out-of-cell time requirement.

5722051, at *9 (S.D.N.Y Feb. 4, 2019) (a "declaratory judgment is a declaration of rights, not a form of injunctive relief.").

The same is true of Croom's request for a "restraining order" of undefined duration and scope until Menard "is brought to constitutional requirements." Injunctive relief ordinarily is not available to provide open-ended relief until some amorphous goal unrelated to the parties and issues in the case is achieved. *See Sanders v. Barwick*, No. 25-cv-663, 2025 WL 1255696, at *4 (S.D. Ill. Apr. 30, 2025) ("Injunctive relief must be limited to the claims and parties in the case."). This principle applies with particular force in the prison context, where a court's ability to grant injunctive relief is circumscribed by the Prison Litigation Reform Act ("PLRA"). *See* 18 U.S.C. § 3626(a)(2) ("Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm."). Accordingly, Croom's request for a "restraining order" until Menard meets "constitutional requirements" is not an appropriate form of injunctive relief in this case.

Croom's request for a court order directing Defendants to place him in a different prison meets the same fate. There is no denying that Croom desperately wants out of Menard. Although he prefers to be sent to Dixon Correctional Center, he insists that he is "not picky" and would accept a transfer to any prison in the country (state or federal). While the Court is generally not in the business of supervising the administration of state prisons, such an order is not necessary here. *See Holleman v. Zatecky*, 951 F.3d 873, 882 (7th

Cir. 2020) ("The difficulty of living under the strict regimen of a prison includes by definition a loss of choice in one's home.").

Croom takes issue with the limited amount of time he has been given to exercise and leave his cell. Transferring him to another prison is far from the "least intrusive" means of addressing this concern. The Court could, in theory, order Defendants to grant Croom the out-of-cell time he needs, without directing them to transfer him out of Menard altogether. Thus, Croom's request for a prison transfer is not appropriate here.

Finally, the appointment of experts is not an available remedy. Croom has not explained why he needs multiple experts specializing in solitary confinement. To the extent he wants the Court to appoint experts to help Menard update its lockdown practices, he has not said so, nor explained why outside experts are necessary to accomplish this goal. And to the extent Croom asks the Court to appoint experts to help him present his underlying case, the Court is unable to do so. *See Roberts v. Thrasher*, 2:20-cv-00376, 2021 WL 1857118, at *2 (W.D. Wash. Jan. 11, 2021) (denying similar request in prison conditions case because "the Court may not appoint an expert under Rule 706 to serve as an advocate for a party.").

The Court thus declines to order relief in the form of Croom's first, second, third, fourth, and fifth proposed remedial measures. This narrows Croom's motion for injunctive relief to his request for two hours of out-of-cell time per day.

### LEGAL STANDARD

"A preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it." *Cassel v. Snyders*, 990 F.3d 539, 544 (7th

Cir. 2021) (internal quotation marks omitted). The purpose of an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating that he (1) has a reasonable likelihood of success on the merits; (2) has no adequate remedy at law; and (3) will suffer irreparable harm absent an injunction. *Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012). "If the court determines that the moving party has failed to demonstrate any one of these three threshold requirements, it must deny the injunction." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of United States of America, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008), *abrogation on other grounds recognized by Ill. Rep. Party v. Pritzker*, 973 F.3d 760, 762-63 (7th Cir. 2020).

The first preliminary injunction requirement is critical here. It requires "the applicant [to] make a *strong showing* that she is likely to succeed on the merits." *Pritzker*, 973 F.3d at 762 (emphasis added). "[A] possibility of success is not enough." *Id.* "Neither is a 'better than negligible' chance." *Id.* This is a "significant burden," but it stops short of requiring the applicant to show that she will "definitely win the case." *Id.*

The Seventh Circuit has also described injunctions like the one sought here, requiring an affirmative act by the defendant, as a mandatory preliminary injunction. *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id.* (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)).

## DISCUSSION

Croom, as noted, is proceeding on an Eighth Amendment conditions of confinement claim based on the denial of exercise opportunities outside of his cell. The Eighth Amendment imposes "a minimum standard for the treatment of inmates by prison officials: the prison conditions must not, among other things, involve the wanton and unnecessary infliction of pain." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks omitted). The analysis proceeds in two steps. First, the Court must determine "whether the conditions at issue were 'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). If a prisoner satisfies this step, the Court examines "whether prison officials acted with 'deliberate indifference' to the conditions in question." *Id.* "'Deliberate indifference' . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* Examples of conditions that can support an Eighth Amendment claim include (i) the inadequate provision of food, (ii) severe pest infestations, (iii) "extreme and prolonged" restrictions of movement and exercise, and (iv) contaminated drinking water. *Smith v. Dart*, 803 F.3d 304, 312-13 (7th Cir. 2015).

The record, in its current form, does not demonstrate an Eighth Amendment violation. Defendants submitted compelling evidence in response to Croom's motion that undermines his claim that he is being subjected to what he calls unconstitutional "tyrannical abuse." Wills, the warden of Menard, submitted a declaration explaining that

Menard was indeed subject to lockdown orders from December 20, 2024, through the end of April 2025. (Doc. 46-1 (Wills Decl. ¶ 25)). These lockdowns, he explained, were "primarily instituted due to a critical staffing shortage." (*Id.*). As of May 29, 2025, Menard was "short 263 officers in order to maintain a full roster." (*Id.* ¶ 26). Thus, although inmates of the East Cell House ordinarily receive "yard and recreation time twice per week" for five-hour periods, Wills does not dispute that lockdowns can reduce or even eliminate this practice for certain periods of time. (*Id.* ¶ 29). And notably, Wills does not dispute Croom's claim that he was not permitted out-of-cell exercise time for several months.[2]

Curiously, however, Croom himself stated in recent filings that he *has* received out-of-cell time to exercise. On June 24, 2025, Croom filed his reply brief in support of his motion for a preliminary injunction where he explained that he was permitted yard time to exercise on March 13 (before his motion for a preliminary injunction was even docketed), March 24, and April 24, 2025. (Doc. 49, p. 13-14). He was also allowed to go to the law library on March 25 and April 19, 2025. (*Id.*, p. 14). Croom also told the Court in his December 2025 motion for status that he had received out-of-cell exercise opportunities 16 times since returning to Menard a year earlier. (Doc. 55, p. 2).

Against this backdrop, the Court must determine whether Croom is likely to succeed on the merits of his claim that he is being subjected to "sufficiently serious" conditions of confinement under the Eighth Amendment. Although "the lack of exercise

---

[2] Croom was permitted to leave his cell twice during that time period to attend court hearings. (Doc. 46-1 (Wills Decl. ¶ 30)).

can rise to a constitutional violation, . . . short-term denials of exercise may be inevitable in the prison context." *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001). In *Delaney*, "for 6 months, [the plaintiff] remained in a cell the size of a phone booth without any meaningful chance to exercise." *Id.* at 684. This, the court held, violated the Eighth Amendment because the "duration and severity" of this deprivation were serious and "no alternatives were made available to mitigate the effects of [it]." *Id.* Croom, in contrast, was not permitted out-of-cell recreation time for less than three months (he arrived at Menard on December 20, 2024, and was granted his first opportunity for yard time on March 13, 2025). From March through early December 2025, Croom, by his own admission, was granted 16 opportunities for out-of-cell exercise time (*i.e.*, more than once, but less than twice per month). Although the record does not reveal whether these opportunities arose in regular intervals or were clustered around a shorter period of time, the number of exercise opportunities that Croom received sets this case apart from *Delaney*. This is not to say that the Court is not concerned about Croom's credible allegations of prolonged lockdowns at Menard, which result in a lack of out-of-cell time. But in analyzing Croom's constitutional claim, it is appropriate (and necessary) to differentiate between a six month deprivation of exercise opportunities (*Delaney*) and one that lasted less than three months before exercise opportunities were restored. *See Thomas v. Ramos*, 130 F.3d 754, 763-65 (7th Cir. 1997) (70-day denial of exercise permissible).

Croom's Eighth Amendment claim is also weakened by the penological justifications for the extended lockdowns at Menard. "[T]here may in certain cases be legitimate penological reasons justifying an *extended* denial of exercise privileges."

*Delaney*, 256 F.3d at 684 (emphasis added). Menard imposed extended lockdowns between December 2025 and May 2025 because the prison was experiencing "a critical staffing shortage." This was not just a shortage in name—the facility was "short 263 officers in order to maintain a full roster." The severity of this staffing shortage is likely apparent to most observers. It also permits a commonsense inference that a proportional operational response was needed. In contrast, the defendants in *Delaney* "merely sa[id], in conclusory fashion, that allowing inmates yard time for exercise would pose a 'potential security threat.'" *Id.* This was not enough to justify the substantial deprivation of exercise that had taken place. *Id.* "Given the length of this exercise restriction, the state defendants should have, but didn't, advance any legitimate penological need for denying all forms of outside exercise." *Id.* Here, Defendants offered a legitimate penological need for the extensive lockdowns and temporary exercise denials that took place: the "critical shortage" of prison staff. This justification, which was supported by Wills's detailed affidavit, undermines the strength of Croom's Eighth Amendment claim.

Finally, Croom has offered no information regarding his ability to exercise *inside* his cell. "[T]here is a significant difference between a lack of outdoor recreation and an inability to exercise." *Smith*, 803 F.3d at 313. Courts are generally skeptical of Eighth Amendment claims based on a lack of exercise when the plaintiff does not allege that his cell prevents *all* forms of exercise. *See id.* (dismissing conditions of confinement claim based on lack of "outdoor recreation" because plaintiff did not allege that his cell restricted movement so that exercise was impossible). On this point, Croom undercuts his own argument. He states that he "does not exercise . . . due to extreme depression

stemming from this systematic oppression, . . . and tyrannical abuse." He thus attributes his lack of exercise, at least in part, to his psychological struggles, not a physical inability that Defendants imposed on him. So, while the Court is sympathetic to Croom's emotional struggles in prison and does not seek to minimize their seriousness, his Eighth Amendment claim is undermined by the lack of allegations that he is unable to exercise in his cell at all.

In sum, Croom has not made the "strong showing" necessary to establish a likelihood of success on the merits of his Eighth Amendment claim. His failure to satisfy this threshold requirement is fatal to his request for injunctive relief. *See Galindez v. Ahmed*, No. 20–CV–00655, 2021 WL 2661473, at *2-3 (S.D. Ill. June 29, 2021) (denying prisoner's motion for preliminary injunction because he failed to establish likelihood of success on merits of Eighth Amendment claim).

### Conclusion

For these reasons, the Motion for Emergency Preliminary Injunctive Relief and a Temporary Restraining Order filed by Plaintiff Christopher Croom (Doc. 40) is **DENIED**.

**IT IS SO ORDERED.**

DATED: January 9, 2026

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**