IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

CHRISTOPHER CROOM,

  Plaintiff,

v.            Case No. 3:23-CV-02885-NJR

LATOYA HUGHES, ROB JEFFREYS,
and ANTHONY WILLS,

  Defendants.

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Christopher Croom, an inmate of the Illinois Department of Corrections ("IDOC"), filed this lawsuit under 42 U.S.C. § 1983 alleging violations of his rights under the Eighth and Fourteenth Amendments. (Doc. 8, p. 2 (First Merits Review Order)). Croom alleges he suffered cruel and unusual punishment because of the lack of out-of-cell recreation time he received as an inmate of the Menard Correctional Center's ("Menard") East Cell House, where he was, and is now again, housed. (*Id.*). Croom often was afforded access to the prison yard only once a week and sometimes received no out-of-cell time at all because of lockdowns, weather, or other "excuses" from staff. (*Id.*, p. 3). The Court dismissed Croom's complaint for failure to state a claim without prejudice because (i) his Fourteenth Amendment claim was not based on a protected liberty interest, and (ii) his Eighth Amendment claim failed to allege that the named Defendants personally decided to limit his out-of-cell time. (*Id.*, pp. 8, 11).

On February 20, 2024, Croom filed a first amended complaint, naming as Defendants Anthony Wills (the warden of Menard), Latoya Hughes (the director of the IDOC), and Rob Jeffreys (the former director of the IDOC). The amended complaint alleged that East Cell House inmates were confined to their cells for 24 hours a day. (Doc. 14, p. 2 (Second Merits Review Order)). At most, inmates were afforded yard access twice per week for 4-4½ hours at a time. (*Id.*). Yard time, however, was often limited to once per week and sometimes not provided at all due to frequent lockdowns. (*Id.*, p. 3). These restrictions caused Croom to suffer emotional and physical harm, including insomnia, anxiety, degenerative disc disease, body aches and other symptoms. (*Id.*, p. 3, 4). After threshold review of Croom's amended complaint pursuant to 28 U.S.C. § 1915A, he was permitted to proceed on one claim:

> An Eighth Amendment conditions of confinement claim against Anthony Wills, Latoya Hughes, and Rob Jeffreys for restricting his access to yard and other privileges while housed in the East Cell House.

Now in discovery, Croom is dissatisfied with the evidence Defendants have produced. He thus filed a motion to compel the production of certain documents that Defendants withheld. (Doc. 60). With Defendants' submission of an opposition (Doc. 64), Croom's motion is ripe for disposition.

## LEGAL STANDARD

"District courts have broad discretion in discovery-related matters." *Equal Emp. Opportunity Comm'n v. Wal-Mart Stores E., L.P.*, 46 F.4th 587, 601 (7th Cir. 2022). Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense," and public policy

favors the disclosure of relevant materials. *Nucap Indus. Inc. v. Robert Bosch LLC*, No. 15 CV 2207, 2017 WL 6059770, at *1 (N.D. Ill. Dec. 7, 2017) (quoting *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002)). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Rayome v. Abt Elecs.*, No. 21 C 2639, 2024 WL 4119139 (N.D. Ill. Sept. 9, 2024) (quoting *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004)). But the scope of discovery also has its limits. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Courts "must limit the frequency or extent of discovery" if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." FED R. CIV. P. 26(b)(2)(C).

## DISCUSSION

Croom contests Defendants' responses to five document requests under Federal Rule of Civil Procedure 34. These requests seek lockdown records (Request No. 1), documents reflecting inmate population counts (Request No. 2), documents reflecting staff and officer counts at Menard (Request No. 3), a "staff roster" showing the number of vacancies at Menard (Request No. 4), and documents showing the types of vacant positions at Menard (Request No. 5). Croom seeks responsive documents that cover a four-year period from 2022 through 2026 (except Request No. 4, which is limited to the year 2025). Defendants largely limited their productions of documents to the years 2022 and 2023 because Croom's claim is based on events that happened during that timeframe. So, although each of the disputed requests concerns a different class of documents, the

parties' dispute boils down to a question of discoverability: should Defendants be compelled to produce documents covering a time period that is not directly related to the events that give rise to Croom's Eighth Amendment claim?

The Eighth Amendment imposes "a minimum standard for the treatment of inmates by prison officials: the prison conditions must not, among other things, involve the wanton and unnecessary infliction of pain." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (internal quotation marks omitted). The analysis proceeds in two steps. First, the Court must determine "whether the conditions at issue were 'sufficiently serious' so that 'a prison official's act or omission results in the denial of the minimal civilized measure of life's necessities.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). If a prisoner satisfies this step, the Court examines "whether prison officials acted with 'deliberate indifference' to the conditions in question." *Id.* "'Deliberate indifference' . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Id.* Examples of conditions that can support an Eighth Amendment claim include (i) the inadequate provision of food, (ii) severe pest infestations, (iii) "extreme and prolonged" restrictions of movement and exercise, and (iv) contaminated drinking water. *Smith v. Dart*, 803 F.3d 304, 312-13 (7th Cir. 2015).

It is well-established that prolonged denials of out-of-cell time and a lack of exercise opportunities can support an Eighth Amendment claim. *See e.g.*, *Turley v. Rednour*, 729 F.3d 645, 652 (7th Cir. 2013); *Delaney v. DeTella*, 256 F.3d 679, 683-84 (7th Cir. 2001); *Pearson v. Ramos*, 237 F.3d 881, 884 (7th Cir. 2001). When a prisoner advances

such a claim, the reasons for the deprivation of out-of-cell time play an important role because they bear on the defendant's state of mind (*i.e.*, whether he imposed lockdowns wantonly or for legitimate penological purposes). *See Pyles v. Spiller*, No. 13-cv-0299, 2016 WL 2957865, at *12-13 (S.D. Ill. May 23, 2016) (examining lockdown patterns in connection with Eighth Amendment claim). And lockdowns that occur for "flimsy reasons or no reason at all" very well may serve as evidence of deliberate indifference. *Turley*, 729 F.3d at 652.

Here, Defendants have argued that "critical staffing shortage[s]" demanded the imposition of prolonged lockdowns at Menard. *See Croom v. Hughes*, No. 3:23-CV-02885, 2026 WL 73785, at *4 (S.D. Ill. Jan. 9, 2026) (order denying motion for preliminary injunction). Indeed, according to Warden Wills, in late 2024 and early 2025, Menard was allegedly "short 263 officers in order to maintain a full roster." *Id.* And, as this Court recognized in a prior order denying injunctive relief, such substantial staffing shortages can provide a legitimate justification for prolonged lockdowns. *Id.*; *see also Delaney*, 256 F.3d at 684 ("[T]here may in certain cases be legitimate penological reasons justifying an *extended* denial of exercise privileges.") (emphasis added).

But while staffing shortages *may* justify the imposition of prolonged lockdowns, they do not offer a categorical defense to Eighth Amendment claims based on such conduct. *Cf. Walton v. Nehls*, 135 F.4th 1070, 1076 (7th Cir. 2025) ("Eighth Amendment cases require a flexible approach that is not often compatible with *per se*, broadly applicable rules."). It is therefore up to the adversarial process to examine the facts of

each Eighth Amendment claim to determine whether the deprivation inflicted on the plaintiff (*i.e.*, the prisoner) offends the Constitution.

Here, Defendants have taken an overly narrow view of their discovery obligations. Croom's document requests, at their core, test Defendants' argument that staffing shortages at Menard warranted the imposition of prolonged lockdowns. Defendants, for their part, have refused to produce documents from 2024, 2025, and 2026 because Croom's claims concern events that took place in 2022 and 2023. While the Court agrees that Croom's claims are limited to that period, that does not mean that the documents he requested for the following years are not discoverable. As noted, Defendants have already produced documents from 2022 and 2023. Suppose those documents demonstrate a 25% staffing shortage at Menard that led to the lockdowns that gave rise to this action. Now suppose similar records from 2024 through 2026 demonstrate more severe staffing shortages (say 50%) but *fewer* lockdowns. Such evidence would serve to undermine Defendants' purported justification for the deprivation of out-of-cell time that Croom experienced. The Court therefore disagrees with Defendants' interpretation of the scope of their discovery obligations in connection with Request Nos. 1, 2, 3, and 5.[1]

"[A]s with all discovery matters, the [C]ourt has broad discretion whether to compel discovery." *Cefalu v. Village of Glenview*, No. 12 C 5995, 2013 WL 12618212, at *2 (N.D. Ill. June 28, 2013). The scope of discovery is, of course, broad and courts generally

---

[1] The Court denies Croom's motion to compel insofar as it concerns Request No. 4 because that request only sought documents from 2025. These documents have no temporal connection to Croom's Eighth Amendment claim, which, as noted, arose in connection with events that took place in 2022 and 2023.

"look unfavorably upon significant restrictions placed upon the discovery process." *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 235 F.R.D. 447, 450 (N.D. Ill. 2006). But courts also "can limit discovery if [they] determine[] that the burden or expense to comply outweighs its likely benefit considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *Cefalu*, 2013 WL 12618212, at *2 (internal quotation marks omitted).

Here, the Court finds that documents responsive to Request Nos. 1, 2, 3, and 5 are discoverable insofar as they cover the years 2022 through 2025. Defendants have already produced documents from 2022 and 2023. Similar documents from 2024 and 2025 will provide Croom with sufficient information regarding the lockdown patterns at Menard and the purported reasons why they were imposed. Defendants need not produce responsive documents from 2026, which would be too temporally attenuated from the events in this case.

## CONCLUSION

For these reasons, Plaintiff Christopher Croom's motion to compel (Doc. 60) is **GRANTED in part** and **DENIED in part**. Defendants are **DIRECTED** to produce documents in response to Request Nos. 1, 2, 3, and 5 covering the years 2022 through 2025. Croom's motion is **DENIED** insofar as it concerns documents from the year 2026. The motion is further **DENIED** insofar as it concerns Request No. 4.

Defendants are **ORDERED** to supplement their document productions consistent with this order within **30 days**. If a modification of the current scheduling order is

necessary to accomplish these remaining tasks, the parties may seek a modest extension of relevant deadlines after conferring in good faith.

**IT IS SO ORDERED.**

**DATED:  July 17, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**