**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **CHRISTOPHER CROOM,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LAYOTA HUGHES, ROB JEFFREYS, and ANTHONY WILLS,**<br><br>**Defendants.** | **Case No. 3:23-CV-02885-NJR** |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Christopher Croom, an inmate of the Illinois Department of Corrections housed at Menard Correctional Center ("Menard"), filed this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights by Defendants Latoya Hughes, acting director of the IDOC, Rob Jeffreys, former acting director of the IDOC, and Anthony Wills, the Warden at Menard ("Defendants"). Specifically, Croom claims that they violated his right to Due Process by punishing him for fights he was allegedly not involved in and his Eighth Amendment right to be free of cruel and unusual punishment by subjecting him to solitary confinement. (Doc. 11).

Croom now moves the Court to compel discovery responses from Defendants. (Doc. 76). On February 2, 2026, Croom submitted two requests for production seeking indoor video footage for specified dates and the measurement of the "unencumbered" space in cells at the East Cellhouse. (*Id*. at 30). Defendants objected to the former as overly burdensome and the latter as vague and overbroad; they also stated that they did not

possess the requested measurements. (*Id*. at 31-32). Croom then specified which cells he sought measurements of but Defendants maintained their objections. (*Id*. at 38).

On March 3, 2026, Croom sent his first set of interrogatories to Defendants. (*Id*. at 3). Defendants responded on April 28 and objected to several of the interrogatories on various grounds, including that they were argumentative and required the assumption of a fact. (*Id*. at 3, 14-15). Croom thereafter sent a second set of amended interrogatories and Defendants once again responded with similar objections. (*Id*. at 19).

Finally, on March 26, 2026, Croom was deposed by Defendants. On April 20, he sought a copy of his deposition transcript from Defendants. (*Id*. at 7). Defendants refused the request as inappropriate and directed him to seek one from the Court Reporter. (*Id*. at 52-53).

After attempting to meet and confer via letter, Croom filed the instant motion to compel, arguing that Defendants are improperly refusing to answer relevant questions, questioning the veracity of Defendants' claim that they do not have unencumbered cell measurements or the requested footage, and once again requesting a copy of his deposition transcript. Defendants filed a response in opposition. (Doc. 78).

## LEGAL STANDARD

Rule 26 of the Federal Rules of Civil Procedure provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need

not be admissible in evidence to be discoverable.

FED. R. CIV. P. 26(b)(1).

"Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Rayome v. Abt Elecs.*, No. 21 C 2639, 2024 WL 4119139 (N.D. Ill. Sept. 9, 2024) (quoting *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 930 (7th Cir. 2004)). A party may file a motion to compel discovery if a party fails to produce documents requested under Rule 34. FED. R. CIV. P. 37(a)(3)(B)(iv). Nevertheless, requested discovery must be "reasonably tailored" to produce information that bears on a party's claims as alleged in the complaint. *Smith v. Portwood*, No. 19 C 5329, 2021 WL 4318076, at *2 (N.D. Ill. Sept. 23, 2021). "Completely open-ended discovery requests without time limitations rarely, if ever, withstand scrutiny." *Davis v. Mitchell*, No. 19 C 3212, 2022 WL 2073010, at *2 (N.D. Ill. June 9, 2022) (collecting cases). A court is not required to re-write an overbroad discovery request for the parties. *Arsberry v. Wexford Health Sources, Inc.*, No. 3:17-CV-50044, 2021 WL 5232733, at *2 (N.D. Ill. Nov. 10, 2021).

## DISCUSSION

Croom moves the Court to order Defendants to (1) answer specified interrogatories, (2) turn over indoor camera footage for specific dates that the "yard was ran," (3) provide measurements of the unencumbered space in named prison cells, and (4) supply a copy of Croom's deposition. The Court grants the motion in part and denies it in part for the reasons specified below.

## I. Interrogatories

Croom seeks responses to interrogatories 4, 6, and 7 from Defendant Wills and to interrogatories 3, 4, 5, 6, and 7 from Defendant Hughes. The Court considers each in turn.

### A. Interrogatory No. 3: "Why have you not attempted to implement this [IDOC Administrative Directive 05.15.105] policy/requirement at Menard?"[1]

Defendants assert that Croom's question is argumentative and requires the assumption of a fact, namely the disputed issue of whether Menard Correctional Center ("Menard") has attempted to implement a required policy. (Doc. 78, p. 2). The Court agrees.

### B. Interrogatory No. 4: "Why has Plaintiff not been being [sic] afforded this [IDOC Administrative Directive 05.15.105] requirement?"

Defendants again assert that Croom's question is argumentative and requires the assumption of a fact, namely that Croom was not afforded a requirement. (*Id*. at 3). The Court agrees.

### C. Interrogatory No. 5: "When exactly did 'short staff' become an issue at Menard?"

Croom later clarified that "short staff" here refers to when "short staff level III lockdowns began." (Doc. 76, pp. 25-26).

Defendants bring two objections. First, that Hughes cannot provide an answer because she began her employment three months before Croom left Menard.[2] (Doc. 78, pp. 3-4). However, interrogatory responses are not limited to personal knowledge; a party

[1] IDOC Administrative Directive 05.15.105 states that maximum security offenders "must be allowed more than 2 hours of cell time daily as well as access to general population services." (Doc. 76, p. 20).
[2] He was transferred back to Menard on 12/26/2025. (Doc. 33).

must furnish all responsive, non-privileged information available upon reasonable inquiry. *See Luster v. Ill. Dep't of Corr.*, 652 F.3d 726, 731 n.2 (7th Cir. 2011) ("A party answering an interrogatory must provide the non-privileged, responsive information he has, whether or not he has personal knowledge or admissible evidence of the matter.").

Second, Defendants claim that Croom was already "provided records regarding the staffing levels at Menard during the relevant timeframe." (Doc. 78, p. 4). However, the question of when *lockdowns* due to short staffing began is a distinct inquiry from what staffing levels were during this period.

Accordingly, Defendants shall respond to Interrogatory No. 5 upon reasonable inquiry.

**D. Interrogatory No. 6: "Even if short staff was not an issue, inmates in the East cellhouse would be afforded, at most, out of cell time 2 times per week. So when will this policy be instituted at Menard? In East cellhouse?"**

Defendants once again object to this interrogatory because it is argumentative and requires an assumption of the fact that the policy in question was not implemented in Menard or in the East Cellhouse. (*Id*. at 4). The Court agrees.

**E. Interrogatory No. 7. "Are you aware of the psychological and physical harms inherent in locking a human being, solitarily confining a human being to a cell 24 hours a day, 7 days a week?"**

Defendants object that this interrogatory is argumentative and the Court agrees. (*Id*. at 5). It appears to function more as a rhetorical assertion of Croom's theory of the case rather than a genuine request for information.

## II. Production of Camera Footage

Croom next seeks camera footage of the yard for an eight-hour period on specified dates in March and April 2025. He asserts that "this footage will support Plaintiff's claim that not only was Menard not on lockdown on those dates, as documents submitted to this court by defendants attest to falsly [sic], but also how unshort [sic] staffing levels are, and also the filthy appalling conditions of that cellhouse." (Doc. 76, p. 6).

Defendants object to the request as overbroad. They further explain that footage is saved only if tied to a pending investigation and is otherwise overwritten. Given the practical challenges of storing large volumes of footage, the Court finds Defendants' explanation credible.[3] Nearly a year and a half has elapsed since the dates in question and Croom has not identified any incidents that would have given prison officials reason to preserve the specified footage. Thus, the Court denies Croom's motion to compel the footage.

## III. Unencumbered Space Measurements

Croom seeks production of the "unencumbered cell space in the cells of the East Cellhouse in Menard," specifically the cells he was housed in. (*Id*. at 31). Defendants respond that they do not have this information. (Doc. 78, p. 6). The Court finds this

[3] Croom claims that Menard "deliberately" destroyed footage in violation of its written retention policy to keep digital media "for two years provided no litigation is pending or anticipated." (Doc. 76, pp. 5-6; 42). However, a prison's failure to comply with its written policy or regulation does not alone or automatically amount to an actionable violation. *See Furrow v. Marberry*, 412 F. App'x 880, 881 (7th Cir. 2011) ("Even if a prison regulation was violated by failing to administer a psychological screening before placement in restrictive confinement, a failure to comply with a prison regulation or policy did not by itself raise a constitutional issue.").

representation credible. While cell dimensions may be more readily available, measurements of the open space within each individual cell are far less likely to be something Defendants possess.

**IV. Croom's Deposition Transcript**

Finally, Croom seeks a copy of his deposition on March 26, 2026. (Doc. 76, p. 7). Defendants object that it is not their responsibility to send Croom a copy and direct him to the appropriate address and phone number through which he may purchase his copy. (Doc. 78, p. 8). The Court agrees. If Croom wishes to have a copy of the transcript, he must obtain one from the Court Reporter.

**CONCLUSION**

For these reasons, the Motion to Compel filed by Plaintiff Croom (Doc. 76) is **GRANTED in part and DENIED in part.**

Defendants are **ORDERED** to respond to interrogatory No. 5 upon reasonable inquiry.

The remainder of Croom's motion is **DENIED.**

**IT IS SO ORDERED.**

**DATED: September 21, 2026**

**NANCY J. ROSENSTENGEL**
**United States District Judge**